# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 18-23023-CIV-GOODMAN
### [CONSENT CASE]

JACKI LYN CONNOR,

      Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT,
INC.,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

This putative class action concerns the allegedly questionable debt-collection practices of Defendant Midland Credit Management, Inc. before the now-defunct National Arbitration Forum ("NAF") and Florida state courts. In 2009, following a lawsuit by the Minnesota Attorney General and an investigation by a U.S. House of Representatives' Subcommittee, the NAF agreed to stop arbitrating claims. Plaintiff Jacki Lyn Connor alleges that Midland, which was not registered as a debt collector in Florida until shortly before the NAF ceased to function, used a law firm with close financial ties to the NAF to obtain, without proper notice, thousands of arbitration awards and final judgments against consumers in Florida.

Connor alleges that she became a victim of Midland's practice in 2005 when it obtained, by default, an arbitration award against her before the NAF. Midland then had that award confirmed in Florida state court in 2007, also by default. At neither of those times was Midland registered as a debt collector under Florida law (as Midland first registered as a Florida debt collector on January 1, 2009). Several years later, in November 2017, Midland issued writs of garnishments to Connor's employer.

On July 25, 2018, approximately ten months after the writs issued, Connor sued Midland, raising four claims: violation of 15 U.S.C. § 1692e (Count I) and § 1692f (Count II) of the Fair Debt Collection Practices Act ("FDCPA"); violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 et seq. (Count III); and unjust enrichment (Count IV). Connor later amended her complaint to add a fifth claim: violation of the Federal Arbitration Act ("FAA")(Count V).

Midland's motion to dismiss the amended complaint raises five issues: (1) whether the *Rooker-Feldman* doctrine divests the Court of subject-matter jurisdiction over some of the FDCPA and FCCPA claims; (2) whether Connor's claims are either barred by the statute of limitations or are meritless (depending on whether the claims are based on pre-registration events); (3) whether Connor is bringing an impermissible private cause of action for failure to register, which the FCCPA does not allow; (4) whether Connor's unjust enrichment claim fails for that same reason; and (5) whether the FAA's 90-day statute of limitations bars the claim to vacate the arbitration award.

For the reasons outlined below, the Court **grants in part** and **denies in part** the motion to dismiss as follows:

First, the Court **dismisses without prejudice** Count I, III, and IV as barred by the *Rooker-Feldman* doctrine.

Second, the Court **dismisses without prejudice** Count I as falling outside the FDCPA's one-year statute of limitations. The same ruling applies to those allegations in Count II that are duplicative of Count I, but the Court otherwise **denies** the motion to dismiss as to Count II on limitations grounds.

Third, the Court **dismisses without prejudice** Count III based on the additional reason that, as pled, Connor raises an impermissible private cause of action under the FCCPA for failure to register.

Fourth, and last, the Court **denies** the motion to dismiss as to Count V. Although the question here is a close one, the Court declines to dismiss Count V at this time given that Connor has alleged that she and Midland never entered into an arbitration agreement.

## I.     Factual Background

Because this order addresses a motion to dismiss, the Court will deem all well-pled allegations to be true. The amended complaint alleges the following scenario:

Midland is in the business of buying defaulted debt for pennies on the dollar and then bringing enforcement actions against the debtors in Florida state courts or

arbitration forums. [ECF No. 22, ¶ 35]. Midland exclusively used NAF to file arbitration proceedings and hired the Mann Bracken law firm to do so. [ECF No. 22, ¶ 36]. Unknown to consumers, NAF and Mann Bracken had close financial ties, and the two, in line with creditors like Midland, worked closely together to generate revenues at the expense of consumers. [ECF No. 22, ¶¶ 37–39].

In 2005, Midland initiated arbitration proceedings before the NAF for a debt it had purchased that Connor allegedly owed to Providian Bank. [ECF No. 22, ¶¶ 40–42]. Midland did not produce or provide an arbitration agreement implicating that debt. [ECF No. 22, ¶ 42]. Although Midland allegedly served Connor on July 13, 2005 with a package that included a copy of the arbitration claim, Connor denies receiving the package and does not recall having been served with the arbitration claim. [ECF No. 22, ¶ 43].

On August 26, 2005, the NAF arbitrator entered, by default, an award in favor of Midland and against Connor for $2,826.02. [ECF Nos. 22, ¶ 44; 22-1, pp. 2–3]. Connor alleges that "[t]he arbitration award was void because Midland was not licensed in Florida to engage in debt collection activity." [ECF No. 22, ¶ 45].

On July 21, 2006, Midland, as a servicing agent for MRC Receivables, filed an action in the County Court in Palm Beach County, Florida to confirm the arbitration award. [ECF Nos. 22, ¶ 46; 22-1, pp. 5–6]. Midland was unlicensed at that time, too. [ECF No. 22, ¶ 46]. Midland did not attach a copy of any arbitration award to its complaint. [ECF No. 22, ¶ 47].

On January 22, 2007, the County Court entered a default final judgment against Connor and in favor of Midland, as servicing agent for MRC, for $3,348.01, plus interest. [ECF Nos. 22, ¶ 48; 22-1, p. 8]. Midland later became a licensed consumer collection agency in Florida, effective January 1, 2009. [ECF No. 22, ¶ 51]. At no time before then was Midland licensed to collect debts in Florida. [ECF No. 22, ¶ 51].

In July 2009, the Minnesota Attorney General sued the NAF for consumer fraud, false advertising, and deceptive trade practices. [ECF No. 22, ¶ 52]. That same month, the U.S. House of Representatives' Domestic Policy Subcommittee Majority Staff of the Oversight and Government Reform Committee issued a report critical of NAF's arbitration practices. [ECF No. 22, ¶ 53]. The NAF settled the Minnesota lawsuit by agreeing to stop arbitrating in the United States. [ECF No. 22, ¶ 52].

Connor accuses Midland of "us[ing] the NAF, represented by Mann Bracken, to receive thousands of arbitration awards and final judgments against consumers in Florida without disclosing the institutional bias and partiality that existed in the arbitration proceedings or that Midland was not licensed to engage in debt collection activity in Florida." [ECF No. 22, ¶ 57]. Connor also alleges that "Midland regularly initiated arbitration proceedings through the NAF, which has less strict notice and service requirements tha[n] Florida courts," and that "Midland obtained an arbitration award from the NAF, without proper notice, and then sought enforcement of the arbitration award in Florida courts." [ECF No. 22, ¶ 57].

On November 14, 2017, Midland filed a motion for writ of garnishment against Connor. [ECF Nos. 22, ¶ 59; 22-1, pp. 12–13]. The writ issued several days later, and Midland served the writ on Connor's employer and garnished her wages. [ECF No. 22, ¶ 60]. According to Connor, "Midland is actively trying to garnish [her] wages based on the arbitration award and final judgment it received when it wasn't licensed to do so." [ECF No. 22, ¶ 62].

Connor filed this lawsuit against Midland approximately ten months after the writ of garnishment issued, on July 25, 2018. [ECF No. 1]. The original complaint contained Counts I through IV, which are discussed below. Midland moved to dismiss the complaint [ECF No. 17], and, in response, Connor filed her amended complaint, which added a fifth count, also discussed below. [ECF No. 22].

In Count I of the amended complaint, Connor alleges that Midland violated § 1692e of the FDCPA. [ECF No. 22, ¶¶ 75–81]. Connor claims that Midland "violated 15 U.S.C. § 1692e when it used deceptive and misleading methods to collect debts when it threatened to take an action (collecting on void judgments and arbitration awards) that could not be legally taken." [ECF No. 22, ¶ 79].

In Count II of the amended complaint, Connor alleges that Midland violated § 1692f of the FDCPA. [ECF No. 22, ¶¶ 82–87]. Connor alleges that "[a]t no time did Defendant communicate the required statutory disclosures to Plaintiff that she was entitled to verification of the debt and a right to dispute the debt, disclosures required by

15 U.S.C. § 1692g." [ECF No. 22, ¶ 86]. Connor then adds that Midland "used unfair means when it garnished the Plaintiff's wages based on the void arbitration award and final judgment." [ECF No. 22, ¶ 86].

Count III of the amended complaint alleges that Midland violated the FCCPA. [ECF No. 22, ¶¶ 88–93]. Connor claims that Midland "attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it attempted to collect and collected a debt that was based on a void arbitration award or judgment because Defendant was not licensed as a debt collector in Florida when the judgment was obtained." [ECF No. 22, ¶ 90]. Connor also claims that

> [b]y engaging in debt collection activity while not licensed as a debt collector and subsequently seeking to garnish Plaintiff's and class members' wages based on void arbitration awards and judgments, Defendant attempted to collect an amount from Plaintiff and the class that they didn't owe, and threatened to enforce the existence of a legal right that didn't exist.

 [ECF No. 22, ¶ 92].

 In Count IV of the amended complaint, Connor raises an unjust enrichment claim against Midland. [ECF No. 22, ¶¶ 94–98]. Connor alleges that "[b]y its failure to obtain a license as a debt collector in Florida prior to filing an arbitration proceeding or suit against Plaintiff and the class, Defendant has unjustly received and retained a benefit at the expense of Plaintiff and class members." [ECF No. 22, ¶ 95].

 Count V of the amended complaint alleges that Midland violated the FAA. [ECF No. 22, ¶¶ 99–107]. Connor alleges that "[t]he institutional bias and partiality on the part

of NAF, Mann Bracken, and Defendant was not disclosed to the Plaintiff or Class Members and was concealed by Mann Bracken, the NAF and Defendant at all times." [ECF No. 22, ¶ 101]. Connor further alleges that Midland "provided no evidence that Plaintiff entered into an enforceable arbitration agreement with Providian" and that there was no such agreement attached to the NAF's arbitration award or to the state-court complaint to confirm the award. [ECF No. 22, ¶¶ 101, 103]. Moreover, Connor alleges that Midland "obtained the arbitration awards from the NAF when it was unlicensed and through corrupt, fraudulent and undue means." [ECF No. 22, ¶ 105].

In Count V, Connor requests that the Court "vacate all arbitration awards Defendant received before it obtained a license to engage in debt collection activity in Florida under the FAA[.]" [ECF No. 22, ¶ 99]. Alternatively, Connor asks "that the Court vacate all arbitration awards Defendant obtained using the NAF with Mann Bracken as its counsel in Florida under the FAA[.]" [ECF No. 22, ¶ 100].

In her prayer for relief, Connor further requests, among other things: (1) "actual damages, including but not limited to forgiveness of all amounts not owed," (2) statutory damages, (3) "a judgment permanently enjoining Defendant from charging and/or collecting debt in violation of the FCCPA," and (4) "a judgment permanently enjoining Defendant from charging and/or collecting debt in violation of the FDCPA." [ECF No. 22, p. 19].

## II. Legal Standard

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*Iqbal*, 556 U.S. at 679.

## III.    Analysis

Midland seeks to dismiss the amended complaint with prejudice based on five grounds. First, Midland argues that the *Rooker-Feldman* doctrine divests the Court of subject-matter jurisdiction over Counts I, III, and IV. [ECF No. 26, pp. 5–8]. Second, Midland argues that Connor's claims are either barred by the applicable statutes of limitations or are meritless, depending on whether the claims are based on events that took place before or after Midland registered as a consumer collection agency in 2009. [ECF No. 26, pp. 8–10]. Third, Midland argues that there is no private cause of action under the FCCPA for failure to register. [ECF No. 26, p. 10]. Fourth, Midland argues that Connor cannot circumvent the fact that there is no private cause of action under the FCCPA for failure to register by asserting an unjust enrichment claim that seeks the same relief. [ECF No. 26, p. 11]. Fifth, Midland argues that the 90-day statute of limitations under the FAA bars the claim to vacate an arbitration award. [ECF No. 26, p. 12].[1]

---

[1]    Midland also adds in a footnote that the litigation privilege would bar an FCCPA claim that is based on the issuance of writs of garnishments. [ECF No. 26, p. 10 n. 5]. But addressing a legal argument only in a footnote is an incorrect place for substantive arguments on the merits. *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n.1 (S. D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote).

**A.    The *Rooker-Feldman* doctrine bars Connor's first FDCPA claim (Count I), the FCCPA claim (Count III), and the unjust enrichment claim (Count IV).**

The *Rooker-Feldman* doctrine, when applicable, bars federal-court jurisdiction. It applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the doctrine, "[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132 (11th Cir. 2005) (citing *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997)).

But the Eleventh Circuit has recently recognized that "the Supreme Court [has] concluded that the inferior federal courts had been applying *Rooker–Feldman* too broadly" and thus it "expressly limited *Rooker–Feldman's* applicability." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 (11th Cir. 2018) (citing *Exxon Mobil*, 544 U.S. at 280, 283). As a result, the Eleventh Circuit has "since declined to apply [its] previous test for *Rooker–Feldman* analysis and ha[s] instead hewn closely to the language of *Exxon Mobil*." *Target Media Partners*, 881 F.3d at 1285 (citing *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009)).

That previous test, called the *Amos* test, had four factors:

(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to

raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment[.]

*Nicholson*, 558 F.3d at 1272 (internal citations omitted) (quoting *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003)).

Now, the Eleventh Circuit applies *Rooker–Feldman* "to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." *Target Media Partners*, 881 F.3d at 1285–86. But to see if that is the case, the Eleventh Circuit continues to apply "an inquiry similar to the one that preceded *Exxon Mobil*," namely, "whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." *Target Media Partners*, 881 F.3d at 1286 (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). An "inextricably intertwined" claim is one that asks the Court to "effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues[.]" *Id.* (quoting *Casale*, 558 F.3d at 126). But a claim is not considered "inextricably intertwined" where "there was no 'reasonable opportunity to raise' that particular claim during the relevant state court proceeding." *Id.* (quoting *Casale*, 558 F.3d at 126).

The *Rooker–Feldman* doctrine applies to FDCPA claims, even when those claims "seek money damages instead of an outright overturning of the state court judgments." *Severe v. Shapiro, Fishman & Gache, LLP*, No. 14-CIV-80345, 2014 WL 5341886, at *4 (S.D.

12

Fla. Oct. 6, 2014). But district courts in the Eleventh Circuit that have applied the *Rooker-Feldman* doctrine to FDCPA claims "have recognized a distinction between FDCPA claims seeking to overturn state court judgments and FDCPA claims seeking to hold defendants liable for violations of the statute occurring during collection efforts preceding any judgment." *Collins v. Erin Capital Mgmt., LLC*, 991 F. Supp. 2d 1195, 1203 (S.D. Fla. 2013) (collecting cases); *see also Severe*, 2014 WL 5341886, at *4 ("*Rooker–Feldman* does not preclude jurisdiction when a plaintiff asserts violations of the FDCPA which do not implicate the validity of a previous state court judgment or related debt, but focus on, e.g., allegedly improper debt collection methods."); *Solis v. Client Servs., Inc.*, No. 11-23798-CIV, 2013 WL 28377, at *3 (S.D. Fla. Jan. 2, 2013) ("[T]he mere existence of a final judgment will not preclude independent claims relating to the judgment if the district court is not required to determine the validity of the state-court judgment in order to grant relief to the independent claim.").

For instance, in *Collins*, the plaintiff alleged that the defendant violated the FDCPA when it failed "to register as a debt collector and obtain the relevant Florida license *before initiating garnishment actions*." *Id.* at 1204 (emphasis added). The *Collins* Court found that "[a]t least part of the relief sought in this litigation is precisely the type of impermissible case brought by state-court losers complaining of injuries caused by state-court judgments rendered before this case commenced and inviting the Court's review and

rejection of the state-court judgments." *Id.* The *Collins* Court also noted that "the entry of a default judgment against Collins—as opposed to a full trial—is of no consequence." *Id.*

The *Collins* Court, however, also found that the plaintiff had asserted "violations [that] do not implicate the validity of the judgment or debt, but rather focus on the methods used by Erin Capital [the defendant] in collecting the debt." *Id.* As the *Collins* Court explained: "even where Collins incurred a valid debt that Erin Capital was entitled to collect, Erin Capital still may violate the FDCPA if it failed to register with the state *before instituting collection actions*." *Id.* (emphasis added).

Similarly, in *Solis*, the Court found that to the extent the plaintiff was asking the Court to vacate the state-court judgment upholding the validity of a debt, the *Rooker-Feldman* doctrine barred that claim. *Solis*, 2013 WL 28377, at *3. But the plaintiff's independent claims (that the defendant had falsely represented the character, amount, or legal status of the debt, and had failed to provide written validation of the debt before resuming collection activities) *were* permissible. *Id.* at *4; *compare Gallaher v. Estates at Aloma Woods Homeowners Ass'n, Inc.*, 316 F. Supp. 3d 1358, 1363 (M.D. Fla. 2018) (rejecting argument that FDCPA claim violated the *Rooker-Feldman* where the plaintiffs did not deny that they owed a debt but complained of the defendant's steps in collecting the debt) *with Severe*, 2014 WL 5341886, at *4 (finding that "broad base attack[s]" on state-court foreclosure judgment "fall squarely within the province of *Rooker–Feldman* because they

seek relief from this Court which requires adjudging that the state court's final judgment of foreclosure was invalid").

The *Rooker-Feldman* doctrine has likewise been applied to FCCPA and unjust enrichment claims (as well as myriad other causes of actions). *See Laney v. Slaten*, 687 F. App'x 805, 809 (11th Cir. 2017) (affirming dismissal of FDUTPA and FCCPA claims based on the *Rooker-Feldman* doctrine where the allegations concerned the same conduct at issue in the state-court proceedings); *Cavero v. One W. Bank FSB*, 617 F. App'x 928, 930 (11th Cir. 2015) (affirming dismissal of RESPA, TILA, FDCPA, FCCPA, and FDUTPA claims where plaintiffs alleged that bank and law firm had conspired to "wrongfully foreclose" on their property); *Symonette v. Aurora Loan Servs., LLC*, No. 14-15220, 2015 WL 7144369, at *1 (11th Cir. Nov. 16, 2015) (holding that *Rooker-Feldman* doctrine barred district court from considering claims for, among other things, unjust enrichment related to allegedly wrongful foreclosure of home); *Solis*, No. 11-23798-CIV, 2013 WL 28377, at *4 (finding that *Rooker-Feldman* doctrine applied equally to FCCPA claim and FDCPA claim that sought the same relief).

In this case, Midland argues that the *Rooker-Feldman* doctrine bars Count I (FDCPA claim), Count III (FCCPA claim), and Count IV (unjust enrichment claim) of the amended complaint. [ECF No. 26, p. 7]. Midland asserts that (1) Connor was a state-court loser; (2) the state-court proceedings ended in a final judgment, which she never appealed; (3) Connor could have raised those claims in state court but never did; and (4) that the claims

are "inextricably intertwined" with the state-court judgment because their validity depends on the judgment being deemed void. [ECF No. 26, p. 7]. In short, Midland argues that the relief Connor "seeks related to these counts would require the Court to effectively overturn the underlying judgments – a textbook example of claims that are barred by *Rooker-Feldman*." [ECF No. 26, p. 8].

The Court agrees. The gravamen of Connor's amended complaint is that the 2005 arbitration award against her and the 2007 state-court judgment confirming that award are void because Midland was not licensed to collect debts in Florida. [*See* ECF No. 22, ¶¶ 1, 3, 4, 45, 49, 70(d), 79, 86, 90]. Indeed, the general allegations concerning the allegedly wrongfully issued writs of garnishments appear under a heading that reads: "**Midland Violated Federal and State Debt Collection Laws By Garnishing Plaintiff's Wages _Based on a Void Arbitration Award and Final Judgment_**." [ECF No. 22, p. 11 (italics and underlining added)]. Moreover, under the class-action allegations, Connor expressly sets forth that one of the issues to be decided is "whether any arbitration award or final judgment Defendant received while unlicensed is void as a matter of law[.]" [ECF No. 22, ¶ 70(d)].

Connor's specific allegations in Counts I, III, and IV further prove the point. Under Count I, Connor alleges that Midland "violated 15 U.S.C. § 1692e when it used deceptive and misleading methods to collect debts when it threatened to take an action (*collecting on void judgments and arbitration awards*) that could not be legally taken." [ECF No. 22, ¶

79 (emphasis added)]. In Count III, Connor alleges that Midland violated the FCCPA "when it attempted to collect and collected a debt that was based *on a void arbitration award or judgment* because Defendant was *not licensed as a debt collector in Florida when the judgment was obtained*." [ECF No. 22, ¶ 90 (emphasis added)]. And in Count IV, Connor alleges that Midland was unjustly enriched "[b]y its failure to obtain a license as a debt collector in Florida *prior to filing an arbitration proceeding or suit against Plaintiff and the class*." [ECF No. 22, ¶ 95 (emphasis added)].

Moreover, Connor's request for relief asks the Court to effectively overturn the state-court judgment and nullify its effect. Specifically, as part of the actual damages, the request asks for "forgiveness of all amounts not owed." [ECF No. 22, p. 19]. And she also asks for "a judgment permanently enjoining Defendant from charging and/or collecting debt in violation of" the FCCPA and FDCPA. *Id.* Consequently, Counts I, III, and IV run afoul of the *Rooker-Feldman* doctrine.

Connor's counter-arguments fail to persuade for several reasons. **First,** Connor argues that she does not meet the first prong of the *Amos* test because the plaintiff-in-fact in the state-court case was "MRC Receivables Corp," with Midland acting as MRC's servicing agent. [ECF No. 29, p. 12]. But this is a non-issue because the Eleventh Circuit has since abrogated the *Amos* test. *Target Media Partners*, 881 F.3d at 1285. Moreover, Connor does not explain, and the Court does not understand, how the agent/plaintiff-in-fact distinction is legally significant. At bottom, the *Rooker-Feldman* doctrine concerns

"*state-court losers* complaining of injuries caused by state-court judgments[.]." *Exxon Mobil*, 544 U.S. at 284 (emphasis added). Connor is the state-court loser here.

**Second,** Connor alleges that she did not have a reasonable opportunity to bring her claims in state court because she did not receive notice of either the arbitration proceeding or the state-court proceeding. [ECF No. 29, p. 13]. Connor submits that her allegations that she did not receive notice of those proceedings must be taken as true when analyzing a motion to dismiss. [ECF No. 29, p. 13]. In addition, Connor attaches to her opposition response the return of summons from state court, which she claims contains a service date error that highlights her service concerns (i.e., the process server allegedly noted that he received the summons several days before it actually issued). [ECF Nos. 29, p. 13; 29-1].

The service issues, however, do not change the result. As one court within the Eleventh Circuit succinctly put it when also addressing an argument concerning lack of service of process, "the Eleventh Circuit has never recognized an exception to the *Rooker-Feldman* for judgments that are *void ab initio*." *Lewis v. Scott, Parnell & Assocs., P.C.*, No. 16-CV-00290-PCH, 2016 WL 8078309, at *4 (M.D. Ala. Dec. 16, 2016) (citing *Ware v. Polk Cty. Bd. of Cty. Comm'rs*, 394 F. App'x. 606, 609 (11th Cir. 2010) ("We have not yet recognized an exception to the *Rooker-Feldman* doctrine in cases where the state court that issued the underlying state court judgment lacked jurisdiction.")). Thus, "a claim of faulty service does not allow a party to avoid the *Rooker-Feldman* doctrine." *Flatau v. Sherman Fin. Grp.,*

*LLC*, No. 5:14-CV-245(MTT), 2015 WL 8773299, at *4 (M.D. Ga. Dec. 14, 2015); *see also In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005) (concluding that plaintiff's federal claim is inextricably intertwined with the state adjudications and therefore barred by *Rooker-Feldman* when plaintiff's "due process attack on the state court judgments asserts that the state lacked personal jurisdiction over her because of defective service of process").

Indeed, challenging a default judgment based on lack of service of process is the very definition of trying to nullify the judgment. And there is no reason why Connor could not have raised that challenge in state court when she allegedly learned of the default judgment through the writs of garnishment. Florida Rule of Civil Procedure 1.540(b)(4) provides that a party may set aside a judgment that is void *at any time*. *See, e.g., Reyes v. Aqua Life Corp.*, 209 So. 3d 47, 51 (Fla. 3d DCA 2016) ("Judgments entered without notice are void, and relief from a void judgment may be granted at any time.").

**Third**, Connor argues that because this case concerns an "illegally obtained arbitration award," it is distinguishable from other cases, such as *Collins*, that have barred similar claims based on the *Rooker-Feldman* doctrine. [ECF No. 29, p. 14]. But the involvement of an arbitration award does not invalidate the *Rooker-Feldman* doctrine. *See generally Laney*, 687 F. App'x at 805 (holding that *Rooker-Feldman* doctrine barred FDUTPA and FCCPA claims against defendant's attempts to collect an arbitration award judgment debt). In fact, a defect in the arbitration award could have served as a defense to the state-court proceeding to confirm that award. After moving to set aside the default judgment

as void for lack of service of process, Connor could have also argued that the arbitration award is itself void based on either lack of service or lack of an arbitration agreement, two grounds that she raises before this Court.

**Fourth,** pointing to the distinction cases have drawn in FDCPA claims (i.e., "seeking to overturn state court judgments" versus "seeking to hold defendants liable for violations of the statute occurring during collection efforts"), Connor argues that her claims fall in the latter camp. [ECF No. 29, pp. 14–15]. She is incorrect, however. Midland became a licensed consumer collection agency in Florida effective January 1, *2009*, and it did not issue writs of garnishment (i.e., engage in collection efforts) until November *2017*. [ECF Nos. 22, ¶¶ 51, 59; 22-1, pp. 12–13]. So this is not a situation where the defendant failed "to register as a debt collector and obtain the relevant Florida license *before initiating garnishment actions*," which would have been a permissible, independent claim. *Collins*, 991 F. Supp. 2d at 1204 (emphasis added). Rather, Connor's theory is that Midland's lack of registration in *2007* rendered the default judgment void; therefore, her claim is impermissible because it depends on the state-court judgment's validity.

Notably, Midland did not seek to dismiss Count II of the amended complaint under *Rooker-Feldman*, even though it also raised an FDCPA claim, because it is based on issues separate from the judgment itself. In Count II, Connor alleges that Midland failed to "communicate the required statutory disclosures to Plaintiff that she was entitled to verification of the debt and a right to dispute the debt, disclosures required by 15 U.S.C.

§ 1692g." [ECF No. 22, ¶ 86]. These alleged violations do not depend on whether the judgment is valid. As such, the contrast between Count II (which does not run afoul of *Rooker-Feldman*) and Counts I, III, and IV (which do) further informs the Court's conclusion.[2]

In sum, the Court **dismisses** Counts I, III, and IV as barred under the *Rooker-Feldman* doctrine. The dismissal, however, will be **without prejudice**. Connor should be given the opportunity to allege, if she can, consistent with her (and her attorney's) obligations under Federal Rule of Civil Procedure 11, any other "claim for relief that is independent of the state-court proceedings." *Brooks v. Trefry*, No. 15-60770-CIV, 2015 WL 12712063, at *2 (S.D. Fla. July 22, 2015) (recommending dismissal of complaint that ran afoul of the *Rooker-Feldman* doctrine without prejudice so that the plaintiff could cure the deficiency).

> **B.** **The one-year statute of limitations bars FDCPA claims that are based on Midland's lack of registration in 2005 or 2007. Lack-of-registration claims for actions taken after January 1, 2009, when Midland became registered, would not constitute violations. But claims based on lack of disclosures during garnishments in November 2017 are *not* time-barred.**

Midland argues that "all" of Connor's claims are barred by "the state statute of

---

[2] To be sure, Connor further alleges under Count II that Midland "used unfair means when it garnished the Plaintiff's wages based on the void arbitration award and final judgment." [ECF No. 22, ¶ 86]. It is unclear whether this allegation is duplicative of the allegations under Count I or whether Connor is alleging that the lack of required disclosures is an "unfair means" of garnishing wages. To the extent the allegation is duplicative, then it would also be barred by the *Rooker-Feldman* doctrine.

limitations." [ECF No. 26, p. 8]. Midland, however, provides argument only as to the one-year statute of limitations under the FDCPA, which reads as follows: "An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); [*see* ECF No. 26, pp. 8–9]. Only Counts I and II raise FDCPA claims, so the Court will analyze whether the violations alleged in those counts were timely asserted under the statute of limitations.[3]

In Count I, Connor alleges one violation: that Midland "violated 15 U.S.C. § 1692e when it used deceptive and misleading methods to collect debts when it threatened to take an action (collecting on void judgments and arbitration awards) that could not be legally taken." [ECF No. 22, ¶ 79]. In Count II, Connor also seems to allege one violation: that Midland failed to "communicate the required statutory disclosures to Plaintiff that she was entitled to verification of the debt and a right to dispute the debt, disclosures required by 15 U.S.C. § 1692g." [ECF No. 22, ¶ 86]. But then Connor adds in Count II that

---

[3]     In a footnote, Midland says that "[a] one year . . . statute of limitations applies under the FDCPA, *see* 15 U.S.C. § 1692k(d), a two year statute of limitations applies under the FCCPA, *see* Fla. Stat. § 559.77(5), and a four year statute of limitations applies to Plaintiff's unjust enrichment claim. *See* Fla. Stat. § 95.11." [ECF No. 26, p. 10]. But Midland's substantive argument concerns only the FDCPA claims. A footnote is an incorrect place for substantive arguments on the merits. *E.g.*, *Mazzeo*, 2014 WL 5846735, at *2 n.1. And the Court will not do Midland's counsel's job and create its own FCCPA and unjust enrichment argument.

If Midland wants to renew these statute-of-limitations arguments in a renewed motion to dismiss (or in any other substantive motion, for that matter), then it will need to provide substantive arguments with citations to authorities within the body of the motion. Otherwise, the Court will deem the argument waived.

Midland "used unfair means when it garnished the Plaintiff's wages based on the void arbitration award and final judgment." [ECF No. 22, ¶ 86].

Instructive here is *Collins*, which concerned the application of the statute of limitations to similar FDCPA claims. In *Collins*, the defendant argued that "class members whose wage garnishment claims were filed before August 3, 2011 fall outside the FDCPA's one-year statute of limitations as [that] case was filed on August 4, 2012." *Collins*, 991 F. Supp. 2d at 1213. The defendant also argued that it was "entitled to summary judgment with respect to any class members with wage garnishment actions filed after August 27, 2012—the date [the defendant] Erin Capital obtained the requisite Florida license." *Id.* The Court agreed, granting "summary judgment with respect to any Class Plaintiffs with claims arising before August 3, 2011 or after August 27, 2012." *Id.*

As already discussed, the violation alleged in Count I concerns Midland's failure to register as a debt collector under Florida law before 2005 (when it obtained an arbitration award) and before 2007 (when it obtained a state-court judgment confirming that award). Connor did not file this lawsuit until July 25, 2018, many years after those alleged violations. [ECF No. 1]. Therefore, FDCPA claims based on Midland's failure to be registered before 2005 or 2007 would be barred by the statute of limitations. And the same would apply to the "unfair means" allegation under Count II to the extent that allegation is duplicative of Count I.[4] Moreover, Connor would not have cognizable claims

---

[4]     See discussion in note 2, *supra*.

for lack of registration for any actions Midland took after January 1, 2009, because Midland was already registered as of that date.

On the other hand, the alleged violation for failing to provide the required statutory disclosures during garnishment proceedings [ECF No. 22, ¶ 86], would not be barred by the statute of limitations. Midland filed a motion for writ of garnishment against Connor on November 14, 2017. [ECF Nos. 22, ¶ 59; 22-1, pp. 12–13]. Reading the amended complaint in the light most favorable to Connor, she is alleging that Midland failed to provide the necessary disclosures during that time. As such, the one-year statute of limitations would not have run until November 2018, and Connor filed this lawsuit several months before that, in July 2018. [ECF No. 1].

In short, FDCPA claims based on Midland's lack of registration in 2005 or 2007 are barred by the one-year statute of limitations. Moreover, lack-of-registration claims for actions taken after January 1, 2009, when Midland did register itself, would not constitute violations. But claims based on lack of disclosures during garnishments filed by Midland in November 2017 are not barred by the statute of limitations.

As before, the dismissal is **without prejudice**. Connor may add any other legitimate FDCPA violations that do not violate the statute of limitations (and that, of course, do not violate the *Rooker-Feldman* doctrine, as discussed previously).

**C.** **There is no private cause of action under the FCCPA for failure to register under § 559.553, and Connor cannot circumvent that principle by instead alleging a violation of § 559.72(9) or an unjust enrichment claim.**

In Count III, Connor brings a direct FCCPA claim. Connor alleges that Midland

> attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it attempted to collect and collected a debt that was based on a void arbitration award or judgment because Defendant was not licensed as a debt collector in Florida when the judgment was obtained. *Id.* § 559.72(9); §559.553.

[ECF No. 22 ¶ 90].

Section 559.72(9) states that in collecting consumer debts, no person can "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). Section 559.553 states that "[a] person may not engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration." Fla. Stat. § 559.553(1).

Midland argues that the Court should dismiss Count III because the FCCPA does not provide a private cause of action for failure to register. [ECF No. 26, p. 10]. Midland relies on two cases: *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) and *Carrero v. LVNV Funding, LLC*, No. 11-62439-CIV, 2014 WL 6433214 (S.D. Fla. Oct. 27, 2014). In *Leblanc*, the Eleventh Circuit held that "[s]ection 559.553 of the FCCPA does not

itself provide a private right of action." 601 F.3d at 1191. In *Carrero*, the district court, addressing § 559.72(9) in particular, dismissed an FCCPA claim where the plaintiff alleged that the defendant's "filing of a state court lawsuit when it was not registered under Fla. Stat. § 559.553 violates § 559.72." *Carrero*, 2014 WL 6433214, at *2.[5]

The Undersigned agrees with Midland. Like the plaintiff in *Carrero*, Connor is alleging that Midland's failure to register under § 559.553 is a violation of § 559.72(9). [ECF No. 22 ¶ 90]. But § 559.553 does not provide a private cause of action, *LeBlanc*, 601 F.3d at 1191, and a plaintiff cannot circumvent that fact but recasting a § 559.553 requirement into a § 559.72(9) violation, *Carrero*, 2014 WL 6433214, at *2. Therefore, as pled, Count III raises a non-existent claim.

In her opposition response, Connor counters that she "has not alleged a violation of Fla. Stat. § 559.553," but only of § 559.72(9). [ECF No. 29, pp. 18–19]. But that is obviously incorrect. In paragraph 90 of her amended complaint, under Count III, Connor quite clearly says that Midland violated the FCCPA "because [it] *was not licensed as a debt collector in Florida when the judgment was obtained,*" and then she cites to *both* § 559.72(9) *and* § 559.553. [ECF No. 22 ¶ 90 (emphasis added)]. In addition, the out-of-state cases Connor cites to are unpersuasive in light of the binding Eleventh Circuit authority and

---

[5]     Other courts in this district have held the same. *See Ambroise v. Am. Credit Adjusters, LLC,* No. 15-22444-CIV, 2016 WL 6080454, at *3 n.1 (S.D. Fla. Mar. 22, 2016) ("district courts have held no private right of action exists under the FCCPA for failing to register").

the highly persuasive, intra-district case presented by Midland (not to mention the fact that the issue concerns a Florida statute, making non-Florida cases less persuasive).

Therefore, the Court **dismisses without prejudice** Count III of the amended complaint. If Connor can, in good faith, allege other direct violations of § 559.72, then she may do so. The Court also notes that an FDCPA claim may be premised on a failure to register under the FCCPA. *Carrero*, 2014 WL 6433214, at *3 ("In *LeBlanc*, the Eleventh Circuit reasoned that a violation of the FCCPA might serve as the basis for a lawsuit under the FDCPA."). But Connor will still have to contend with the *Rooker-Feldman* doctrine and statute-of-limitations issues already outlined.

In the same vein, the Court **dismisses without prejudice** Count IV, which raises an unjust enrichment claim. In Count IV, Connor alleges that Midland was unjustly enriched "[b]y its failure to *obtain a license as a debt collector* in Florida prior to filing an arbitration proceeding or suit against Plaintiff and the class." [ECF No. 22, ¶ 95 (emphasis added]. In *Carrero*, the district court followed an earlier ruling in a different case in which it had "declined to extend the already amorphous boundaries of unjust enrichment actions to allow for a de facto private action for violation of FCCPA." *Carrero*, 2014 WL 6433214, at *5. The Court here finds that logic persuasive and rules the same way.

### D.    The Court will not, at this time, dismiss Count V based on the FAA's 90-day statute of limitations.

Section 12 of the FAA states that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney *within three months* after

the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). Thus, "[p]arties generally have three months after the award is filed or delivered to challenge the award in federal district court." *Durr v. Adams Beverages, Inc.*, 710 F. App'x 358, 360–61 (11th Cir. 2017).

In this case, Midland argues that Count V, which raises a claim to vacate the 2005 arbitration award, is time-barred under § 12. Specifically, Midland obtained the arbitration award against Connor on August 26, 2005. [ECF Nos. 22, ¶ 44; 22-1, pp. 2–3]. Moreover, taking as true the allegation that Connor did not have notice of the arbitration proceeding or the state-court action, she at least learned of the award sometime in November 2017, when writs of garnishments issued. [ECF Nos. 22, ¶¶ 51, 59; 22-1, pp. 12–13]. But Connor did not file this lawsuit until July 2018. [ECF No. 1]. So Connor's claim to vacate the arbitration award would seem to be several months, if not several years, too late.

However, Connor argues that § 12 does not bar her claim because she did not participate in the arbitration proceedings and because there was no arbitration agreement in the first place. [ECF No. 29, pp. 6–8]. She relies heavily on *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998), where the First Circuit held "that, as a general matter, section 12, as well as section 2 and the other enforcement provisions of the FAA, do not come into play unless there is a written agreement to arbitrate." *Id.* at 430. In that case, a company obtained an arbitration award by default against another company in August 1995, and the losing company never requested that the arbitrator

vacate, modify, or correct the award. *Id.* at 428. A year later, the arbitration award winner

moved to enforce the award in U.S. district court. *Id.* The arbitration loser responded,

denying that an arbitration award existed in the first place. *Id.*

The award winner, citing to § 12 of the FAA, countered that its opponent's "failure

to challenge the award within three months after it was filed or rendered barred it from

contesting its validity before the district court." *Id.* The district court agreed, but the First

Circuit reversed that decision. *Id.* at 428–30. The First Circuit reasoned that there was "no

indication that Congress intended for a party to be found to have waived the argument

that there was no written agreement to arbitrate if that party failed to raise the argument

within the time period established by section 12." *Id.* at 430. Thus, the First Circuit

concluded:

> A party that contends that it is not bound by an agreement to arbitrate can
> therefore simply abstain from participation in the proceedings, and raise
> the inexistence of a written contractual agreement to arbitrate as a defense
> to a proceeding seeking confirmation of the arbitration award, without the
> limitations contained in section 12, which are only applicable to those
> bound by a written agreement to arbitrate.

*Id.*

Connor also relies on *Buczek v. Trans Union LLC*, No. 05-80834 CIV, 2006 WL

3666635 (S.D. Fla. Nov. 9, 2006), where the district court, relying on *MCI*, held that a car

company was free to disregard an arbitration award where the underlying car lease did

not contain an arbitration award. *Id.* at *2. Instead, the plaintiff had sent a "unilateral,

contractually unauthorized invocation of arbitration," apparently adopting a debt-

management scheme taught by seminars sponsored by the National Arbitration Council ("NAC"). *Id.* The Court rejected and condemned that tactic, joining other district courts that had done the same. *Id.*

In addition, Connor argues that if the 90-day limitations period *does* apply, then the deadline should have been equitably tolled. [ECF No. 29, pp. 8–9]. The reason: because she "was not a participant in the arbitration" and because Midland "prevented her from raising this claim within the three-month period." [ECF No. 29, p. 9]. Connor then says that she diligently hired counsel after learning of the arbitration award. [ECF No. 29, p. 9].

Lastly, Connor contends that the FAA empowers a district court to vacate an award "'procured by corruption, fraud, or undue means' or where the arbitrators 'exceeded their powers.' 9 U.S.C. § 10(a)(1)." [ECF No. 29, p. 9].[6]

For its part, Midland argues that *MCI* and *Buczek* should be limited to their facts; specifically, those cases involved a party challenging an arbitration award at the *confirmation stage*. [ECF No. 32, p. 6]. By contrast, the arbitration award here was confirmed in 2007. Moreover, Midland argues that Connor is not deserving of equitable

---

[6]     Connor also argues, in a footnote, that "Florida law also states that void judgments and arbitration awards can be collaterally attacked at any time." [ECF No. 29, p. 8]. Again, a footnote is not the correct place for substantive argument. *E.g., Mazzeo*, 2014 WL 5846735, at *2 n.1. Moreover, this argument actually undermines Connor's case because it shows that she can attack the void judgment at any time, *in Florida state court*.

tolling because she waited ten months to file suit even after learning of the arbitration award. [ECF No. 32, p. 7 n. 4].

No party has cited to any controlling authority on the § 12 issue, and the Court could find none. And the answer is not a straightforward one, either. On the one hand, it is true that *MCI* and *Buczek* concerned awards being challenged at the confirmation stage, while the lawsuit at bar was filed many years after the award confirmation. On the other hand, the rationale underlying *MCI* and *Buczek* -- i.e., that absent an arbitration agreement, an arbitration award is a nullity -- applies with equal force regardless of whether a challenge is levied at the confirmation stage or in a separate action.

And to further complicate matters, there is the intersection of the *Rooker-Feldman* doctrine in all of this, a crossroads highlighted by the procedural posture in this case. It seems that Connor added Count V to hedge against a *Rooker-Feldman* problem. Her first complaint did not contain a count to vacate the arbitration award. [ECF No. 1]. Only after Midland moved to dismiss the complaint based on, among other things, the *Rooker-Feldman* doctrine [ECF No. 17], did Connor add a count to vacate the arbitration award [ECF No. 22]. As mentioned previously, the involvement of an arbitration award does not, as a general matter, invalidate the *Rooker-Feldman* doctrine. *See generally Laney*, 687 F. App'x at 805.

Moreover, it is questionable whether equitable tolling applies generally to FAA actions and specifically to this case. Several courts, including the Eleventh Circuit, have

questioned the existence of a "due diligence" exception to § 12. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) ("Although some courts have considered the possibility that a due-diligence exception to section 12 might be granted in some circumstances, appellant cites no case in which such an exception has been granted."); *see also Belz v. Morgan Stanley Smith Barney, LLC*, No. 3:13-CV-636-J-34MCR, 2014 WL 897048, at *7 (M.D. Fla. Mar. 6, 2014) (collecting cases) ("[T]he Trustee fails to cite to any authority in support of applying an equitable exception to the FAA's limitations period, and the Court questions whether any such exception exists."). And, either way, Connor waited ten months after learning of the arbitration award to file this action, which is not indicative of due diligence in the face of a three-month limitations period.

Still, the Court declines to dismiss Count V at this stage of the proceedings. Notably, Midland did not argue that the *Rooker-Feldman* doctrine applied to Count V. Moreover, cases like *MCI* and *Buczek* raise doubt about whether § 12 even applies where a party is claiming that there was **no arbitration agreement in the first place**. The FAA is replete with references to a written arbitration agreement, underscoring its importance as a prerequisite to an arbitration award being valid. *See generally Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004). It also does not escape the Court that *Buczek* and this case both involved arbitral forums with questionable practices that were widely condemned.

As such, Midland has not convinced the Court to dismiss Count V solely based on § 12's limitations period. The Court may revisit this issue later. But, for now, Count V will be allowed to stand.[7]

**DONE AND ORDERED** in Chambers, in Miami, Florida, on February 20, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All Counsel of Record

---

[7] The Court would also note that if an arbitration agreement did exist, then Midland could easily bring it to the Court's attention by way of, for example, a summary judgment motion and get the issue resolved. Therefore, the factual reality of whether a contract ever existed should weigh heavily on the mind of the party who will ultimately lose on that seemingly simple factual issue.